No. 20538.

Colorado State Board of Medical Examiners, etc. *v.*
Reginald B. Weiler.
(402 P.2d 606)

Decided May 17, 1965.    Rehearing denied June 21, 1965.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, PETER L. DYE, Assistant, for plaintiffs in error.

DONALD E. LA MORA, JAMES P. MOYERS, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

WE will refer to plaintiffs in error as the Board and to defendant in error as plaintiff or by name.

Plaintiff's license to practice medicine in the State of Colorado having been revoked by the Board, he brought proceedings in the district court under Rule 106, R.C.P. Colo., asking that the order of the Board be reversed and his license restored. The district court granted the relief sought and the Board is here on writ of error directed to the judgment, ordering restoration of the plaintiff's license.

The charges against the plaintiff as made in the proceedings before the Board appear in the following form:

"1. It has been brought to the attention of the Colorado State Board of Medical Examiners that there is reason to suspect that Reginald B. Weiler, a person having a license to practice medicine in this State, has been

guilty of unprofessional conduct as defined in the Medical Practice Act of 1951.

"2. Accordingly, the Board has made an investigation to determine the probability of the commission of such offense and has found the probability great of the commission of the following:

"(a) Obtaining a fee or other compensation, either directly or indirectly, on the representation that a manifestly incurable disease, injury or condition of any person can be cured. (C.R.S. '53, 91-1-17 (3) ).

"(b) Conduct unbecoming a person licensed to practice medicine or detrimental to the best interests of the public (C.R.S. '53, 91-1-17(10) ).

"(c) The aiding or abetting, in the practice of medicine, of any person not licensed to practice medicine as defined under this article or any person whose license to practice medicine is suspended (C.R.S. '53, 91-1-17(11) ).

"(d) Grossly negligent or ignorant malpractice. (C.R.S. '53, 91-1-17 (12) ).

"(e) Violating, or attempting to violate, directly or indirectly, or assisting in or abetting the violation of or conspiring to violate any provision or term of this article. (C.R.S. '53, 91-1-17(14) ).

"3. The particular matter considered in connection with the charge contained in Section 2 (a) above, was the representation made to Mrs. Howard Smith of Blanca, Colorado, concerning her child, Jimmie Smith.

"4. The particular matters considered in connection with the charge contained in Section 2 (b) above, were as follows:

"(a) Grossly immoral conduct unbecoming a person licensed to practice medicine with a certain Eleanor F. Leonard.

"(b) Grossly immoral conduct unbecoming a person licensed to practice medicine in:

"1. The taking of certain photographs and movie film of himself and of patients and of himself and patients.

"2. The possession and use in the treatment of patients, or intended use in the treatment of patients, of certain pictures, photographs and movie films.

"(c) Conduct detrimental to the best interests of the public in,

"1. The asserting of medical qualifications, degrees, special training and distinctions which he either did not possess or which were of no recognized value.

"2. The holding out of qualifications in and the practice of a medical specialty in which he was not properly qualified.

"5. The particular matters considered in connection with the charge contained in Section 2 (c), above, were with relation to the following individuals:

"(a) Nesbit L. Hamilton

"(b) Alfred Jones

"6. The particular matters considered in connection with the charge contained in Section 2 (d), above, were with relation to the following individuals:

"(a) Dorcas N. Mendizza

"(b) Jean Nelson

"WHEREUPON, it is the determination of this Board that these charges and the matters considered therein shall be heard by the Board at a time and place fixed by it to which the accused shall be given due notice as specified in 91-1-18, '53 C.R.S. to a conclusion as outlined by 91-1-18, '53 C.R.S."

A hearing was completed by the Board on April 26, 1959, and on July 14, 1959, it entered the following order:

"After reviewing the evidence by way of the reporter's transcript of a hearing held at Colorado Springs, Colorado, in the above-entitled action, and after much discussion the Board of Medical Examiners took the following action unanimously in the REGINALD B. WEILER matter:

"The Board finds Dr. Reginald B. Weiler guilty of violating or attempting to violate directly or indirectly the charge of obtaining a fee or other compensation either

directly or indirectly on the representation that a manifestly incurable disease, injury or condition of any person can be cured.

"The Board finds Dr. Weiler guilty of conduct detrimental to the best interests of the public in the asserting of medical qualifications, degrees, special training and distinctions which he either did not possess or which were of no recognized value.

"The Board finds Dr. Reginald B. Weiler guilty of the aiding or abetting in the practice of medicine of Nesbit L. Hamilton, who was a person not licensed to practice medicine as defined under this Article.

"The Board finds Dr. Weiler guilty of grossly negligent or immoral malpractice in the matter of Dorcas N. Mendizza.

"The Board finds Dr. Reginald B. Weiler, M.D., not guilty of all other matters charged in the statement of charges.

"The Board unanimously votes that since Dr. Reginald B. Weiler has been found guilty of the above charges, his license be revoked."

■ With reference to the determination of the Board that the plaintiff was guilty of obtaining a fee on the representation that an incurable disease could be cured, it is sufficient to say that no competent evidence was presented before the Board tending to establish the truth of that charge. The trial court in an extended opinion pointed out the total absence of any competent proof on this point. It is sufficient for us to say that no such evidence exists and the trial court was correct in so holding.

■■ With reference to the findings of the Board that the plaintiff was guilty of conduct detrimental to the best interests of the public in asserting medical qualifications, degrees, special training, and distinctions which he either did not possess or which were of no recognized value, a careful examination of the record fails to show any evidence warranting such a determination

of fact. The plaintiff was the holder of a license to practice medicine. It is important to note that the State of Colorado does not issue or require any additional licenses or certifications with relation to specialized areas in the practice of that profession. There was evidence that the plaintiff displayed on the walls of his office certain certificates issued by various organizations and societies. Other doctors testified that they had never heard of these societies; but this, in and of itself, falls far short of establishing that said societies are nonexistent. The trial court correctly found that there was no competent evidence tending to establish the truth of the charge under discussion.

■ As to the finding of the Board that the plaintiff was guilty of aiding or abetting one Hamilton in conduct amounting to an unauthorized practice of medicine, the record is wholly insufficient to establish guilt.

■ As already indicated, the Board found the plaintiff guilty of "grossly negligent or immoral malpractice in the matter of Dorcas N. Mendizza." In disposing of the questions raised by this finding the trial court made the following pertinent statement:

"The Court takes judicial notice of the fact that on Jan. 31, 1959, an information was filed against the plaintiff charging plaintiff with the rape of Dorcas McAllister Mendizza, that said criminal action, No. 10722, was pending in this court at the time of the hearing before the board in April, 1959, that the criminal trial started August 25, 1959, and was concluded August 29, 1959, by a directed verdict of not guilty."

We note that the findings under discussion purported to find the plaintiff guilty of "grossly negligent *or* immoral malpractice" as succinctly pointed out by the trial court:

"The fourth finding which was the result of a charge supported by some evidence is even more objectionable. 'Guilty of grossly negligent or immoral malpractice in the matter of Dorcas N. Mendizza.' The most obvious ob-

jection is the finding of 'immoral malpractice.' The Board's authority comes solely from the statute itself and it cannot create new grounds for the revocation of a license. The statute makes no reference to immoral malpractice and the plaintiff was not charged with immoral malpractice. Even if the Board had used the proper word (i.e. ignorant malpractice) which it probably intended, the charges of grossly negligent or ignorant malpractice are not compatible offenses. If the plaintiff is guilty of one he can't be guilty of the other. By this finding the Board didn't really find the plaintiff guilty of either."

In view of the fact that the plaintiff was found not guilty of all other charges, it necessarily follows that the judgment of the trial court must be, and accordingly is, affirmed.

MR. JUSTICE SUTTON and MR. JUSTICE McWILLIAMS dissent.

MR. JUSTICE SUTTON dissenting:

I would reverse the judgment of the trial court and deny plaintiff Weiler the restoration of his medical license for the sole reason hereinafter set forth.

It is true that the wording used by the Board was somewhat awkward when it described part of Weiler's conduct as making him "guilty of grossly negligent or immoral malpractice in the matter of * * *." In my view, however, such wording, and the evidence to sustain the improper conduct with the woman in question, show gross professional misconduct which I would legally equate with the charge of "Grossly negligent or ignorant malpractice."

MR. JUSTICE McWILLIAMS dissenting:

The Board revoked Dr. Weiler's license to practice medicine on the ground that he was guilty of unprofessional conduct in that he was "guilty of grossly negli-

gent or immoral malpractice in the matter of Dorcas N. Mendizza." The applicable statute empowers the Board to revoke the license to practice medicine of one who is deemed guilty of unprofessional conduct, and unprofessional conduct is defined, among other things, as "grossly negligent or ignorant malpractice."

As I read the record, there is ample evidence to support the finding of the Board that Dr. Weiler was indeed guilty of grossly negligent — or immoral — malpractice. Most certainly it is grossly negligent malpractice, to say the least, for a physician to recommend extra-marital sexual intercourse for a female patient who is suffering from a psychological disorder and who has submitted herself into his care for diagnosis and treatment. For such physician to thereafter participate in the course of treatment which he has thus prescribed compounds his initial wrongdoing. In my view this type of malpractice may with all propriety be labeled as immoral malpractice or as grossly negligent malpractice.

The majority of this Court adopt and approve the reasoning of the trial court to the effect that the finding of the Board that Dr. Weiler was guilty of "grossly negligent or immoral malpractice" is a complete nullity in that "by this finding the Board didn't really find the plaintiff guilty of either." I disassociate myself from this conclusion which I regard to be pure sophistry.

"Immoral malpractice" may not be a statutory ground for revoking a license to practice medicine, but "grossly negligent malpractice" is. In my view the Board found Dr. Weiler guilty of grossly negligent malpractice, which conduct it chose to additionally describe and characterize as immoral malpractice. The majority approve the trial court's observation that grossly negligent malpractice and ignorant (or immoral) malpractice "are not compatible offenses," apparently for the reason that grossly negligent malpractice is deemed to be the complete antithesis of ignorant (or immoral) malpractice. With this observation I disagree. Indeed, the instant case dem-

onstrates that these concepts are not direct opposites, but are as "compatible" as ham and eggs. For these reasons I dissent.